UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD GILLEY,

    Plaintiff,

v.

LTMX ENTERPRISES, INC. f/k/a & d/b/a
LINCOLN TRAIL MOTOSPORTS, INC.,
JEAN L. RAMSAY, WILLIAM G.
RAMSAY and TIM L. JACKSON,

    Defendants.

Case No. 08-cv-688-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendants Jean L. Ramsay, William G. Ramsay and Tim L. Jackson (Doc. 37). Plaintiff Donald Gilley has responded to the motion (Doc. 39), and Jean Ramsay, William Ramsay and Jackson have replied to that response (Doc. 40).

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969

F.2d 368, 371 (7th Cir. 1992). In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

## II.     Facts

Viewed in the light most favorable to Gilley, the evidence establishes the following facts.

On May 7, 2006, Gilley rode his all-terrain vehicle ("ATV") at a commercial off-road motor vehicle sport facility known Lincoln Trail Motosports ("Lincoln Trail"). Lincoln Trail was operated by defendant LTMX Enterprises, Inc. ("LTMX") and consisted of more than 200 acres of outdoor trails, land and grounds where ATV riders could pay a fee and ride their own ATVs. While riding at Lincoln Trail, Gilley was seriously injured in a collision with another ATV as he came over the top of a steep hill. In this lawsuit, he attributes his accident to the failure to have instructions, warnings, traffic controls and supervision for ATV riders at Lincoln Trail that would have prevented him from colliding with the other ATV. He has sued LTMX, Jean Ramsay, William Ramsay and Jackson for negligence and for willful and wanton misconduct.

At the time of the accident, defendant Jean Ramsey was the sole shareholder and president of LTMX. Ramsey claims to be an employee of LTMX, but states that his compensation was solely through shareholder dividends. He also owned the land on which Lincoln Trail was located and leased it to LTMX for that purpose. The lease provided that LTMX would maintain the land and use it solely for the purpose of conducting off-road recreational activities but reserved to Jean Ramsay the right to farm and harvest timber on the land. Jean Ramsay signed for both parties to the lease, on one side for himself and on the other

2

as president of LTMX.

Defendant William Ramsay, Jean Ramsay's brother, had at one point jointly owned with Jean Ramsay the land on which Lincoln Trail was situated and had been an LTMX shareholder, but he sold the land and his interest in the business to Jean Ramsey in the early 1980s. On January 17, 2008, he further executed a quitclaim deed to Jean Ramsay for 60 of the more than 200 acres of property on which Lincoln Trail operated.

At the time of the accident, defendant Jackson also had no interest in LTMX or the land on which Lincoln Trail was situated. However, on January 18, 2008, he purchased the land and a majority of LTMX's assets, although Lincoln Trail continues to be operated by LTMX on the land.

Defendants Jean Ramsay, William Ramsay and Jackson ask the Court for summary judgment on the grounds that they do not possess, maintain or control the land on which Gilley's accident occurred and therefore owed no duty to Gilley, as a business invitee, to provide him a reasonably safe environment. They assert LTMX, the corporation that now has virtually no valuable assets, is the only proper defendant in this case.

**III. Analysis**

To prevail in a cause of action for negligence based on premises liability, the plaintiff must show a defendant owed him a duty of care, the defendant breached that duty and the breach proximately caused injury. *See Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). Whether a duty exists is a legal question. *Id.* at 1053-54. The touchstone of the Court's inquiry is "whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* at 1057.

3

A special relationship exists between the possessor of property and those who enter upon his property at his invitation. Under the Illinois Premises Liability Act, an owner or occupier of land owes entrants onto the land a duty "of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." 740 ILCS 130/2. In addition, common law also imposes a duty on a possessor of land to those he invites to his property. That duty is summarized in § 343 of the Restatement (Second) of Torts:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965). This duty also extends to the acts of third persons on the land:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to
> (a) discover that such acts are being done or are likely to be done, or
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (1965)

This duty of reasonable care does not extend, however, to landowners who are not in possession and control of the property they own. "For a duty to arise under the law of premises liability, the defendant must possess and control the real property on which the tort occurred." *Godee v. Illinois Youth Soccer Ass'n*, 764 N.E.2d 591, 594-95 (Ill. App. Ct. 2002) (citing *Esser v. McIntyre*, 642 N.E.2d 803, 807 (Ill. App. Ct. 1994) ("In order for a defendant's duty of care to

4

arise under the common law of premises liability, the defendant must have possession and control of the real property on which the tort occurred."), *aff'd*, 661 N.E.2d 1138 (Ill. 1995)); *accord Kotecki v. Walsh Constr. Co.*, 776 N.E.2d 774, 779 (Ill. App. Ct. 2002). "A defendant does not owe a duty to a plaintiff if the defendant does not control or intend to control the land." *Godee*, 764 N.E.2d at 595 (citing *Collins v. Mid-America Bag Co.*, 535 N.E.2d 48, 49 (Ill. App. Ct. 1989)).

This holds true for leased property if the lessor no longer has control over the property. Where a landowner leases property to a lessee and no longer occupies or has control over the property, there can be no premises liability for the landowner. *Wright v. Mr. Quick, Inc.*, 486 N.E.2d 908, 909 (Ill. 1985); *Guerino v. Depot Place P'ship*, 652 N.E.2d 410, 413 (Ill. App. Ct. 1995); *Buente v. Van Voorst*, 571 N.E.2d 513, 514 (Ill. App. Ct. 1991). This is because such a lease ends the lessor's control and conveys it to the lessee in possession, who from that time on owes a duty of reasonable care to entrants on the property. *See Wright*, 486 N.E.2d at 909; *Guerino*, 652 N.E.2d at 413; *Buente* at 514.

A. <u>Jackson</u>

Gilley concedes in his response to the summary judgment motion that Jackson, who was not connected with LTMX or the land on which it operates until early 2008, should be dismissed from this case, but he asks that the dismissal be without prejudice.

There is no evidence Jackson possessed or controlled Lincoln Trail at the time of Gilley's accident. Therefore, he cannot be liable under a premises liability theory. Furthermore, the plaintiff has not suggested any other reason for finding Jackson owed a duty of care to Gilley at the time of the May 2006 accident. For this reason, Jackson is entitled to summary judgment.

Contrary to Gilley's request, this conclusion cannot result in dismissal without prejudice.

5

As the Seventh Circuit Court of Appeals has repeatedly stated, "summary judgment is the 'put up or shut up' moment in the life of a case." *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008). Gilley has failed to put up evidence in response to Jackson's summary judgment motion. Furthermore, he has not asked for additional time to respond to the summary judgment motion under Federal Rule of Civil Procedure 59(f) or for voluntary dismissal of Jackson without prejudice under terms the Court considers proper pursuant to Federal Rule of Civil Procedure 41(a)(2). Thus, dismissal with prejudice is the proper result.

  B. <u>William Ramsay</u>

William Ramsay is also entitled to summary judgment. As with Jackson, there is no evidence from which a reasonable jury could conclude William Ramsay had possession and control over Lincoln Trail at the time of Gilley's accident. It is true that William Ramsay at one point had some ownership interest and control over Lincoln Trail and LTMX's predecessor corporation, but that ownership and control ceased decades before Gilley's accident.

The quitclaim deed William Ramsay executed in January 2008 conveying any interest he had in 60 of the 200 acres of Lincoln Trail to Jean Ramsay does not provide a basis for a reasonable jury to find William Ramsay actually had any ownership interest in Lincoln Trail at that time. A quitclaim deed conveys the grantor's interest, if he has any, in property to the grantee, but is not an indication that any such interest actually exists. *See Black's Law Dictionary* 446 (8th ed. 2004) (citing Robert Kratovil, *Real Estate Law* 49 (6th ed. 1974) ("Since [a quitclaim deed] purports to convey whatever interest the grantor has at the time, its use excludes any implication that he has good title, or any title at all."). In light of the warranty deed of 1984 in which William Ramsay conveyed his interest in Lincoln Trail to Jean Ramsay, a later quitclaim deed is simply insufficient for a reasonable jury to conclude that William Ramsay

retained any interest in the property after 1984.

For this reason, William Ramsay is also entitled to summary judgment.

C.   Jean Ramsay

Jean Ramsay is not entitled to summary judgment. It is not, however, because he is the owner of the land on which LTMX operates its business. Instead, it is because of Jean Ramsay's close relationship with LTMX, the entity that possessed and controlled the land and owed Gilley a duty of care, that could allow him to be held liable for the wrongs of the corporation.

Under Illinois law, "[a] corporation is a legal entity which exists separate and distinct from its shareholders, directors and officers." *Jacobson v. Buffalo Rock Shooters Supply Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996) (citing *In re Rehabilitation of Centaur Ins. Co.*, 632 N.E.2d 1015, 1017 (Ill. 1994)). Therefore, shareholders are not generally liable for the corporation's obligations. *Jacobson*, 664 N.E.2d at 331 (citing *In re Estate of Wallen*, 633 N.E.2d 1350, 1357 (Ill. App. Ct. 1994)); *see* 805 ILCS 5/6.40.

There are occasions, however, where a court may disregard corporate separateness from its shareholders – that is, the Court may "pierce the corporate veil" – to find a shareholder liable for a corporate wrong. *Jacobson*, 664 N.E.2d at 331. To justify piercing the corporate veil, there must be "(1) a unity of interest and ownership that causes the separate personalities of the corporation and the individual to no longer exist; and (2) the presence of circumstances under which adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice or promote inequitable consequences." *Id.* (citing *Wallen*, 633 N.E.2d at 1357). The party seeking to pierce the corporate veil bears the burden of making a substantial showing that the corporation is really a dummy or a sham for another entity. *Jacobson*, 664 N.E.2d at 331. In deciding whether there is a unity of interest, the Court should consider numerous factors,

including:

> inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a shareholder; failure to maintain arm's length relationships among related entities; and whether the corporation is a mere facade for the operation of the dominant shareholders.

*Jacobson*, 664 N.E.2d at 331 (citing *Wallen*, 633 N.E.2d at 1357-58).

Jean Ramsay has failed to carry his burden on summary judgment of negating Gilley's claim or pointing to an absence of evidence that would justify piercing LTMX's corporate veil to hold him liable for LTMX's wrongs. On the contrary, the evidence currently in the file is consistent with a finding that Jean Ramsay is the alter ego of LTMX. Furthermore, the evidence suggests LTMX disposed of its valuable assets at Jean Ramsay's direction – and perhaps to Jean Ramsay's personal financial benefit, although there is no evidence of this in the record – for the purpose of depriving Gilley of solvent defendant in this lawsuit. For these reasons, Jean Ramsay is not entitled to summary judgment.

## IV. Conclusion

For the foregoing reason, the Court **GRANTS in part** and **DENIES in part** the motion for summary judgment (Doc. 37). The Court **GRANTS** the motion to the extent it seeks judgment in favor of defendants Williams Ramsay and Tim Jackson, **DENIES** the motion to the extent it seeks judgment in favor of defendant Jean Ramsay and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: August 13, 2009**

                                               s/ J. Phil Gilbert
                                               **J. PHIL GILBERT**
                                               **DISTRICT JUDGE**